**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re<br><br>PROPANE ANTITRUST LITIGATION | Case No. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
HARTIG DRUG COMPANY'S MOTION FOR TRANSFER AND
CONSOLIDATION PURSUANT TO 28 USC § 1407**

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multi-District Litigation, Plaintiff Hartig Drug Company respectfully submits this memorandum of law in support of its Motion to Transfer and Consolidate four related cases to the Western District of Missouri.

This litigation arises out of a conspiracy to fix the price of propane sold in exchangeable portable steel tanks commonly referred to as "propane exchange tanks." Propane exchange tanks are used to fuel outdoor barbeque grills and outdoor heaters. The conspirators are the two leading distributors of propane in propane exchange tanks (Ferrellgas L.P. and Ferrellgas Partners, L.P., which sell propane in propane exchange tanks as "Blue Rhino," and Amerigas Partners, L.P., Amerigas Cylinder Exchange, and UGI Corporation, which sell propane in propane exchange tanks as "Amerigas").

Blue Rhino and AmeriGas conspired to raise the price of propane sold in propane exchange tanks by 13% by charging the same numerical amount per propane exchange tank, while providing 13% less propane. By conspiring to decrease the fill of the average exchange

tank from 17 pounds to 15 pounds, they have been able to charge 13% more per pound without increasing the price of propane per tank, since 2008.

On June 2, 2014, Mario Ortiz and other individual consumers of propane filed a putative class action in the District of Kansas on behalf of end users of propane alleging a conspiracy to decrease the fill levels of propane exchange tanks while maintaining the same price. On June 27, 2014, Glenville Shell filed a putative class action in the District of Kansas on behalf of direct purchasers of propane, regarding the same conspiracy. On June 30, 2014 and July 1, 2014, respectively, Hartig Drug Company and Jason Moore's Texaco filed putative class actions in the Western District of Missouri on behalf of direct purchasers, alleging a conspiracy to fix the price per pound of propane in propane exchange tanks. *See* Schedule of Actions. Each alleges a putative class action, and with the exception of *Ortiz*, each alleges an essentially identical nationwide class of direct purchasers. Each case names nearly all the same defendants. Each case alleges a violation of section 1 of the Sherman Act; the *Ortiz* complaint also alleges state law claims. Finally, each action prays for similar relief, including damages and injunctive relief.

These four actions involve common issues of law and fact, such that consolidation will promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407. Consolidation will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote judicial economy by providing a single forum to which future tag-along actions can be transferred. Accordingly, Hartig Drug Company respectfully moves this Panel for transfer and consolidation to the Western District of Missouri, where two cases are already pending.

**ARGUMENT**

**I.    THESE ACTIONS AND ANY TAG-ALONG ACTIONS ARE APPROPRIATE FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407(a).**

Transfer and consolidation is permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation*, § 20.131 (4th ed. 2004). Transfer and consolidation for pretrial proceedings would achieve those objectives in the instant litigation, and therefore are appropriate here.

**A.    The Actions Involve One or More Common Questions of Fact.**

The four pending actions are based upon identical facts concerning identical conduct by the defendants. The factual questions common to the cases include:

- Whether Blue Rhino and AmeriGas unlawfully contracted, combined and conspired to unreasonably restrain trade in violation of section 1 of the Sherman Act by reducing the fill level in propane exchange tanks from the then-standard 17 pounds to 15 pounds, without a corresponding price reduction;

- Whether Blue Rhino and AmeriGas unlawfully contracted, combined and conspired to unreasonably restrain trade in violation of section 1 of the Sherman Act by agreeing that neither would deviate from their proposal to reduce the fill level to Walmart or other customers;

- Whether Blue Rhino and AmeriGas unlawfully contracted, combined and conspired to unreasonably restrain trade in violation of section 1 of the Sherman Act by pushing Walmart to promptly accept the fill reduction;

- Whether the conduct of Blue Rhino and Amerigas injured the plaintiff and members of the putative classes and if so, to what relief they are entitled;

- The appropriate measure of damages sustained by the plaintiff and putative classes; and

- Whether injunctive relief is appropriate.

Each action concerns the same defendants, product, and conduct, arises from the same event, and (with the exception of *Ortiz*) each class action concerns essentially the same proposed class. Accordingly, the "common questions of fact" criterion is satisfied pursuant to § 1407(a). *See In re Bausch & Lomb, Inc.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006) (consolidating cases that shared factual allegations regarding defendant's testing and development of a product and its knowledge of its alleged adverse effects).

### B.   Consolidation Will Further the Convenience of the Parties and the Witnesses.

Resolution of these common issues in a single forum would further the convenience of all parties and witnesses. *See* 28 U.S.C. § 1407(a). Because all four cases are virtually identical in allegations and factual questions, the plaintiffs in the actions will require depositions of the same persons and discovery of the same documents. The defendants will likely raise the same discovery objections and seek the same protective orders or privileges in each case. Absent consolidation and transfer, all parties will be subjected to duplicative discovery and witnesses will face multiple, redundant depositions. *See In re E.I. DuPont DeNemours and Co. C-8 Pers. Injury Litig.*, MDL No. 2433, 2013 U.S. Dist. LEXIS 52569, *2-3 (J.P.M.L. Apr. 8, 2013); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("[Plaintiffs] will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their . . . allegations. The benefits of having a single judge supervise this pretrial activity are obvious.")

Consolidation will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and

minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

      **C.**      **Consolidation Will Promote the Just and Efficient Conduct of These Actions.**

      By eliminating the risk of duplicative discovery, and the corresponding risk of repetitive and inconsistent pretrial rulings, consolidation will also promote the just and efficient resolution of these actions. It will permit discovery to be effectively and efficiently managed while conserving the resources of the parties, attorneys, and judicial system.

      Due to the nearly identical factual allegations in each complaint, the plaintiffs will have to make duplicative and redundant discovery requests in each action, to which the defendants will raise the same objections and assert the same privileges. As a result, many of the same pretrial disputes are likely to arise in each action. Likewise, due to the nearly identical causes of action in each complaint, the defendants will likely assert the same defenses or file motions to dismiss or for summary judgment on the same claims based on the same arguments in each action. Consolidation is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all four actions. *See In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006).

      Transfer and consolidation is particularly appropriate for these four actions to prevent inconsistent rulings on class certification and other class-related issues. *See id.* ("Centralization… is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary."). This Panel has "consistently held that

transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *accord, e.g., In re Res. Exploration, Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980) ("It is desirable to have a single judge oversee the class action issues in [actions with similar or overlapping classes] to avoid duplicative efforts and inconsistent rulings in this area."). Because each plaintiff, excepting those in *Ortiz*, seek certification of nearly identical classes, arguments in support of and against certification will likely be identical. Transfer and consolidation will eliminate the possibility of inconsistent rulings on these issues, as well.

Finally, the four pending cases plus the tag-along cases that will undoubtedly be filed are sufficiently numerous and complex to warrant consolidation. *See, e.g., In re Maytag Corp. Neptune Washer Prods. Liab. Litig.*, 333 F. Supp. 2d 1382, 1382-83 (J.P.M.L. 2004) (consolidating three actions and two tag-along actions).

## II.     THE WESTERN DISTRICT OF MISSOURI IS AN APPROPRIATE TRANSFEREE FORUM.

Hartig Drug Company respectfully suggests that the Western District of Missouri is the superior forum for the consolidated action. In choosing an appropriate forum, this Panel considers where the largest number of cases is pending; where discovery has occurred; where cases have progressed furthest; the site of the occurrence of the common facts; where the cost and inconvenience will be minimized; and the experience, skill, and caseloads of available judges. *Manual for Complex Litigation*, § 20.132 (4th ed. 2004). In light of these criteria, the Western District of Missouri is the most appropriate forum for the transfer and consolidation of these actions, primarily because it already has two actions pending, it is the least burdened with multidistrict litigation, and the Panel previously consolidated a similar case against these same defendants in that district.

As to the first factor, two of the four pending actions were filed in the Western District of Missouri. With regard to the second and third factors, each action proposed for consolidation was filed between June 2 and June 30, 2014, so have not progressed very far; discovery has not yet occurred and the defendants have not filed a response in any action. However, in a prior case asserting similar facts and allegations against these same defendants that was consolidated by this Panel, the defendants favored consolidation in the Western District of Missouri, and the Panel transferred the cases there. *See* Transfer Order, ECF No. 32, MDL 2086 (Oct. 6, 2009). Both Ferrellgas and AmeriGas reside in the district, with corporate offices both in and around Jefferson City. As the Panel found in MDL 2086, "the Western District of Missouri is an appropriate transferee district" and "a significant amount of discovery is likely to take place in the district." *Id.*

 As to the fourth factor, no one specific location has yet emerged as the dominant site of common facts.

The fifth factor supports the Western District of Missouri as an appropriate transferee forum. Cost and inconvenience will be minimized for the defendants, as they have corporate offices in and around the district.

As to the sixth factor, the docket in the Western District of Missouri is the least burdened among the two districts in which cases are pending: it has only two multidistrict litigations pending, whereas the District of Kansas has four. *See* J.P.M.L., MDL Statistics Report - Distribution of Pending MDL Dockets by District, June 16, 2014, *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-16-2014.pdf. In addition, in part due to an unfortunate shortage of judges, Kansas has 125 cases pending three years or more (8.8% of cases) and a median time to trial of 29.7 months, whereas

the Western District of Missouri has only 47 cases pending this long (2.4% of cases) and a median time to trial of 21.2 months, indicating that this case could be treated most efficiently in the Western District of Missouri. *See* U.S. District Courts – Civil Cases Pending, by District and Length of Time Pending, as of Sept. 30, 2013, *available at* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/C06Sep13.pdf; U.S. District Courts – Median Time Intervals from Filing to Trial for Civil Cases in which Trials Were Completed, by District, During the 12-Month Period Ending Sept. 30, 2013, *available at* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/T03Sep13.pdf.  In addition, while all judges are skilled, Judge Nanette K. Laughrey in the Western District of Missouri is an able and experienced judge with experience in class action cases who will steer this litigation on an efficient and prudent course.

Together, these factors support transfer and consolidation to the Western District of Missouri. *See, e.g., In re DuPont*, 2013 U.S. Dist. LEXIS 52569 at *3 (assigning transfer based on where majority of related actions are pending, convenience for parties and witnesses, and number of existing multidistrict litigations).

## CONCLUSION

For the foregoing reasons, Hartig Drug Company respectfully requests that its motion be granted and that the Panel order transfer of the actions listed in the attached Schedule of Actions, plus any future tag-along actions, to the Western District of Missouri for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: July 2, 2014                                  Respectfully Submitted,

**HAUSFELD LLP**

By:  */s/ Melinda R. Coolidge*

8

Melinda R. Coolidge
Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel:  (202) 540-7200
Fax:  (202) 540-7201
mcoolidge@hausfeldllp.com
mhausfeld@hausfeldllp.com

Brent W. Landau
HAUSFELD LLP
325 Chestnut Street
Suite 900
Philadelphia, PA  19106
Tel: (215) 985-3273
Fax: (215) 985-3271
blandau@hausfeldllp.com

Gregory A. Frank
FRANK & BIANCO LLP
275 Madison Ave, #705
New York, NY 10016
Tel: (212) 682-1853
Fax: (212) 682-1892
gfrank@frankandbianco.com

Thomas V. Bender
WALTERS BENDER STROHBEHN
  & VAUGHAN, P.C.
2500 City Center Square, 1100 Main
Kansas City, MO  64105
Tel:  (816) 274-9728
Fax:  (816) 421-4747
tbender@wbsvlaw.com

*Attorneys for Plaintiff Hartig Drug
Company , Inc.*